UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

William C. Lyons, Jr.          :

v.                             :         No. 3:01cv01355 (JBA)

Fairfax Properties, Inc.,      :
    et al.                     :

### Ruling on Defendant Mario J. Zangari's Motion for Summary Judgment as to Amended Complaint [Doc. # 98]

Defendant Mario J. Zangari has moved for summary judgment as to Count Three of the plaintiff's Amended Complaint, which alleges legal malpractice, on the grounds that (1) the plaintiff is unable to prove damages as a result of the alleged malpractice; (2) the plaintiff is unable to prove that the alleged malpractice proximately caused the damages asserted; and (3) the plaintiff's claims are barred since he executed a valid release. For the reasons discussed below, defendant's motion is granted.

I. Background

Plaintiff William C. Lyons, Jr. is a former employee of Fairfax Properties, Inc. ("Fairfax"), which was a wholly owned subsidiary of the BILCO Company until Fairfax "spun off" of BILCO on June 21, 1999. See Lyons Aff. [Doc. #91] at ¶3; Settlement Agreement [Doc. #93, Ex. 1(A)] at 1. Lyons was also a shareholder in the BILCO Company. The defendant, Mario Zangari, was retained as counsel by Lyons and the other "settling

1

shareholders" to assist with the spin-off of Fairfax from BILCO, with a view to having the settling shareholders redeemed out as shareholders of BILCO. On June 21, 1999, this group of BILCO shareholders signed a Settlement and Reorganization Agreement. See id. As part of the Settlement Agreement, BILCO agreed to take steps, if possible, to distribute Lyons' vested interest in its defined benefit plan, a group pension plan for the company's employees, to a roll-over IRA established by Lyons. See id. at ¶6; BILCO Retirement Plan [Doc. #57, Ex. A] at §8.3. This distribution did not occur, because BILCO's actuary determined that the distribution Lyons sought would require amendment of its Retirement Plan, and that therefore, under the express terms of the Settlement Agreement, such a transfer was not required.[1] In

---

[1] Section 8.3(c) of the Settlement Agreement provides: Prior to or promptly following the execution of this agreement, BILCO shall have notified the actuary of its defined benefit plan that a divisive reorganization is taking place and authorized and directed such actuary to take all steps necessary to distribute on the Closing Date the full amount of vested benefits to Bill, Jr. to a rollover IRA established by Bill, Jr. for the receipt of such benefits; provided, however, that there will be no requirement to complete the foregoing if, in the opinion of the actuary, it would: (x) not be possible under applicable law; (y) require any amendment to the plan; or (z) require any cost to Bilco beyond the cost of the inquiry to the actuary and the normal cost of calculating the amounts owed to any participant and paying amounts out to any participant in connection with the defined benefit plan.

Settlement Agreement [Doc. #93, Ex. 1(A)] at §8.3(c) (emphasis in original).

a ruling issued September 26, 2003, this Court held that BILCO did not breach an obligation to transfer Lyons' funds. See Ruling on Cross Motions for Summary Judgment, September 26, 2003 [Doc. # 103].

Lyons' malpractice claim alleges that he directed Zangari to draft whatever documents were necessary to accomplish his goal of transferring the funds from his BILCO defined benefit plan, and that he advised Zangari that he would not execute the Settlement Agreement unless his funds in the BILCO defined benefit plan were made freely portable. See Affidavit of William C. Lyons, Jr [Doc. # 99] at ¶ 8. Lyons states that Zangari assured him that his goal of transferring his pension funds would be accomplished. See id. at ¶ 9. Prior to signing the Settlement Agreement, Lyons discussed with Zagari Section 8.3(c), which provided that BILCO would take steps, if possible, to distribute Lyons' vested interest in the BILCO pension plan to a rollover IRA, and expressed his reservations that "some of the language of that section might thwart [his] constantly stated directive that [his] Plan funds be transferred out of the BILCO plan." Id. at ¶ 12. According to Lyons, Zangari informed him that while there was no time before the June 21, 1999 closing to accomplish Lyons' goal of transferring his funds, Zangari was continuing to work to do so. See id. at ¶ 13. Lyons states that he signed the Settlement Agreement based on Zangari's representations, and in light of an

escape clause in Section 8.4, which provided:

> This Agreement may be terminated at any time prior to the completion of the Closing by . . . (d) By SOSZ [Zangari] (as agent for the Settling Shareholders) through written notice to Bilco (on behalf of Bilco and the Party Remaining Shareholders) if any of the conditions set forth in Section 8.3 above shall not have been fulfilled on or before June 21, 1999.

Settlement Agreement [Doc. #93, Ex. 1(A)] at §8.4.

The closing took place on June 21, 1999, and Zangari did not exercise the termination rights in Section 8.4, and, according to Lyons, did not notify him that he could exercise his termination rights. See Lyons Affidavit [Doc. # 99] at ¶ 15. While Zangari made attempts subsequent to the closing to effectuate a transfer of Lyons' funds out of the BILCO plan, these attempts were not successful. See id. at ¶17; Memorandum on History of Attempts to Obtain for Bill Lyons, Jr., his Vested Benefits in the BILCO Pension Plan [Doc. # 99, Ex. C].

## II. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In moving for summary judgment against a party who will bear the burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if

he or she can point to an absence of evidence to support an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."). In order to defeat summary judgment, the non-moving party must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

When deciding a motion for summary judgment, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). However, "[w]hen a motion for summary judgment is made and supported as provided in [the Federal Rules], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e). Instead, the party opposing summary judgment must set forth the specific facts in affidavit or other permissible

evidentiary form that demonstrate a genuine issue for trial. See id.

## III. Discussion

To prevail on a legal malpractice claim, a plaintiff must establish "(1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." Mayer v. Biafore, Florek and O'Neill, et al., 245 Conn. 88, 92 (1998) (citation omitted). Here, Zangari argues first that summary judgment is appropriate because Lyons has failed to disclose any expert on the subject of damages, and thus is unable to prove any ascertainable loss. Zangari contends that the question of damages in this case involves a myriad of technical issues beyond the scope of experience of the average citizen, including "evidence regarding the contribution and management of pension funds, gains and losses attendant to the transfer of pension funds to a qualified plan, investment gains and losses, the method and/or manner of investing qualified funds, and the amount of gain or loss resulting from the alleged failure of the subject pension funds to have been transferred to a qualified plan." Memorandum of Law in Support of Motion for Summary Judgment as to Amended Complaint [Doc. # 98] at 7. Lyons acknowledges that he has not disclosed an expert on damages and does not seek to do so, because, as he argues, he seeks only the res of his interest in the BILCO Retirement Plan, which can be

computed without the aid of expert testimony. Lyons states that he seeks damages for the "the deprivation of the res in hand," not the performance of the funds in his hands. See Memorandum of Law in Opposition to Defendant Mario J. Zangari's Motion for Summary Judgment [Doc. # 99] at 10. Lyons states that he can prove these damages by calling the Plan Administrator to testify as to the value of his share as of June 21, 1999 and as of the last annual valuation.

As Zangari notes, however, there is no dispute that Lyons is entitled to the vested funds in his BILCO retirement account, and will receive them once he reaches the requisite retirement age. Zangari's alleged malpractice did not deprive him of the value of his BILCO retirement account. Rather, the malpractice alleged is the failure to secure the transfer of the funds into a rollover IRA account. Thus, what Lyons does not have is the ability to invest the funds in the manner he expected, or retrieve early the funds from his IRA account. The value of the deprivation of the "res in hand" alone constitutes no loss since the res maintains its full value in the Bilco Plan. Lyons' expressed intention to simply call the Plan Administrator as a witness to testify as to the present value of his BILCO Retirement Account, therefore, would fail to establish any damages flowing from Zangari's alleged misconduct. Since the value of his BILCO funds in hand or remaining in the BILCO fund is numerically the same, as the

Plan Administrator's anticipated testimony of value would show, the only potential damages arising from not being able to transfer the res from the fund to his own IRA would be the performance of funds in his hands, not Bilco's, or the value of liquidity to him for his personally determined uses. Lyons has put forward no evidence as to any lost opportunity damages, and appears to claim no damages based on what Lyons "could have done with the funds had they been transferred as he expected." Mem. Opp. [Doc. # 99] at 10.

Even if Lyons did claim such damages, the value of the performance of Lyons' transferred retirement funds in a rollover IRA account cannot be established without the guidance of an expert. Evidence would need to establish, at minimum, the manner in which funds in the IRA account could have been invested, the average rate of return, and any tax consequences or costs incurred from the transfer, and would need to compare such hypothetical results to the actual earnings of his BILCO account. Such evidence clearly involves "specialized knowledge" that is the proper subject of expert testimony. See Fed. R. Evid. 702.

Even if Lyons claimed that Zangari's failure to secure the transfer of his funds to an IRA account prevents him from accessing these funds prior to his reaching the requisite

**IV. Conclusion**

For the foregoing reasons, defendant Mario Zangari's motion to summary judgment [Doc. # 98] is hereby GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut, this 31st day of March, 2004.

10